OPINION
This action in prohibition is presently before this court for final consideration of respondent's motion to dismiss, filed on November 13, 2001. As the primary basis for his motion, respondent, Judge Mitchell F. Shaker, contends that the prohibition petition does not state a viable claim for relief because he has not acted in such a manner as would deprive him of jurisdiction to proceed in the underlying case. As we conclude that this contention has merit, the petition of relators, Dr. Richard R. Ragozine, Jamie Devore, Jane Harris, Stephanie Frankford, and Rosemary Schmitt, will be dismissed.
Relators are the five current duly-elected members of the Board of Education for the Girard City School District. On September 19, 2001, relators were named as the defendants in a recall proceeding filed in the Trumbull County Court of Common Pleas. The recall petitions, which were signed by approximately sixteen hundred residents of Girard, sought the removal of relators from their seats on the board in accordance with the procedure set forth in R.C. 3.07 et seq.[1] As grounds for the requested relief, the petitions essentially alleged that relators had acted in gross neglect of their duties in relation to the construction of a new school.
After the recall proceeding had been pending for approximately twenty-eight days, the Supreme Court of Ohio appointed respondent, a retired common pleas judge, to hear the matter. Respondent immediately scheduled a pretrial hearing for the purpose of considering certain motions which had previously been filed. One day prior to the scheduled date for the pretrial hearing, relators moved to dismiss the action, primarily maintaining that respondent lacked the authority to proceed because a trial on the merits of the petitions had not been scheduled within the time limit delineated in the governing statute.
The pretrial hearing was held on October 19, 2001; respondent rendered judgment four days later. As part of this judgment, respondent overruled relators' motion to dismiss and scheduled the trial on the merits for November 5, 2001. Respondent concluded that the time limit had been tolled as a result of the delay in his appointment by the Supreme Court. Furthermore, in relation to a separate issue, respondent held that although summons on the recall petitions had not been served upon relators at the commencement of the action, relators had not been prejudiced because their attorneys had been aware of the pending action and had submitted an entry of appearance on their behalf.[2]
One week following the issuance of respondent's judgment entry, relators initiated the instant action with this court, alleging in their prohibition petition that the failure to hold a trial in the underlying case within thirty days of filing of the recall petitions had deprived respondent of jurisdiction to proceed in the matter. After reviewing the allegations in the prohibition petition, this court issued an alternative writ and stayed the proceedings in the underlying case. Respondent then filed a motion to dismiss the prohibition petition under Civ.R. 12(B)(6).
Generally speaking, a writ of prohibition is considered an extraordinary remedy which will be issued to prohibit the exercise of judicial power only when a trial judge lacks either personal or subject matter jurisdiction in a case. See, e.g., Goldstein v. Christiansen
(1994), 70 Ohio St.3d 232, 235. In light of this general precedent, the Supreme Court of Ohio has indicated that the writ will lie only when the relator can demonstrate: (1) the trial judge intends to exercise judicial power; (2) the proposed use of power is not authorized under the law; and (3) the denial of the writ will cause an injury for which the relator has no adequate remedy at law. State ex rel. Kaylor v. Bruening (1997),80 Ohio St.3d 142, 144.
In moving to dismiss in the instant case, respondent has not contested the allegation in relators' petition that he intends to exercise judicial power; therefore, respondent's challenge to the sufficiency of relators' claim is limited to the second and third elements. In regard to these elements, the Supreme Court has stated that a trial judge possesses the inherent authority to determine whether personal and subject matter jurisdiction exists in a given case, and that an appeal from that determination is an adequate legal remedy. State ex rel. Ruessman v.Flanagan (1992), 65 Ohio St.3d 464, 466. Accordingly, the existence of the right to appeal a jurisdictional determination will foreclose the issuance of the writ in most instances.
However, the Supreme Court has recognized one exception to the foregoing rule as to the effect of the existence of the right to appeal. If the trial judge's lack of jurisdiction is patent and unambiguous, a writ of prohibition will lie to stop the use of judicial power even if: (1) the trial judge has not had the opportunity to consider the jurisdiction issue; and (2) an adequate remedy through an appeal exists.State ex rel. Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70, 74. Therefore, if the lack of jurisdiction is obvious in nature, a relator needs to satisfy only the first two elements of a prohibition claim to be entitled to the writ.
In interpreting the prior precedent in this area of the law, this court has noted that the Supreme Court will deem a jurisdictional flaw to be patent and unambiguous when the nature of the flaw is such that there are no circumstances under which a trial judge could properly exercise jurisdiction. State ex rel. Suburban Constr. Co. v. Skok (Nov. 6, 1998), Lake App. No. 98-L-116, unreported, 1998 Ohio App. LEXIS 5365. Stated differently, a jurisdictional error will not be characterized as patent and unambiguous when the jurisdictional determination turns upon the resolution of a factual dispute. Willoughby-Eastlake City SchoolDist. v. Lake County Ct. of Common Pleas (Apr. 21, 2000), Lake App. No. 99-L-130, unreported, 2000 Ohio App. LEXIS 1758. In the latter case, this court emphasized that, as part of its analysis in Goldstein, supra, the Supreme Court had held that an alleged flaw in personal jurisdiction could not be patent and unambiguous when the trial judge had to consider conflicting evidence in deciding whether the party had sufficient contact with this state.
In bringing the instant action, relators have not alleged in their petition that the specific circumstances in the underlying case warrant the determination that respondent lacks jurisdiction to go forward; instead, they assert that, whenever a common pleas judge in a recall case fails to hold a trial within the statutory time limit, he loses jurisdiction. Similarly, the tenor of respondent's argument in his motion to dismiss readily indicates that he interprets the applicable statutory language to mean that the failure to hold the hearing in a timely manner can never deprive a judge of jurisdiction.
Given the nature of the parties' arguments, it is evident that if this court were to hold that respondent lacked authority to go forward, the absence of jurisdiction must be patent and unambiguous. In turn, this means that relators would not be required to prove the lack of an adequate legal remedy in order to be entitled to the writ. As a result, our decision as to the sufficiency of the prohibition claim will turn solely upon our resolution of the following question: Under the governing statutes, can a trial judge continue to exercise jurisdiction over a recall/removal case when the trial on the merits has not been held within the statutory time limit?
As was noted above, the recall petitions against relators were filed in accordance with the procedure set forth in R.C. Chapter 3. R.C. 3.07
delineates the grounds upon which a judgment for removal of a public officer can be based. In turn, R.C. 3.08 sets forth the specific procedure to be followed in a removal proceeding. The latter statute provides, in pertinent part:
 "Proceedings for the removal of public officers on any of the grounds enumerated in section 3.07 of the Revised Code shall be commenced by the filing of a written or printed complaint specifically setting forth the charge and signed by qualified electors of the state or political subdivision whose officer it is sought to remove, *** Such complaint shall be filed with the court of common pleas of the county where the officer against whom the complaint is filed resides, *** The judge or clerk of the court shall cause a copy of such complaint to be served upon the officer, against whom the complaint has been filed, at least ten days before the hearing upon such complaint. Such hearing shall be had within thirty days from the date of the filing of the complaint by said electors, ***." (Emphasis added.)
 In responding to the motion to dismiss their prohibition petition, relators assert that the foregoing language governing the timing of the removal trial is mandatory in nature and, accordingly, constitutes a jurisdictional requirement. Relators also assert that the thirty-day requirement cannot be violated because the language in question creates a substantive right in favor of the office holder.
However, our review of the two cases relators have cited in support of their two arguments, In re Removal of Osuna (1996), 116 Ohio App.3d 339
and In re Tunstall (1939), 28 Ohio L.Abs. 635, 1939 Ohio Misc. LEXIS 1070, indicates that both are easily distinguishable. Osuna is not dispositive because it deals solely with the ability to appeal a removal determination under R.C. 3.09. Tunstall is not controlling because it deals solely with the sufficiency of the allegations contained in the removal petitions.In fact, our review of the relevant case law indicates that no court in this state has ever addressed the question of whether the thirty-day requirement in R.C. 3.08 is jurisdictional in nature. Hence, this court must apply the general rules governing the interpretation of Ohio statutes.
The language in question is relatively straightforward. It states that the final hearing on the merits "shall" be held within thirty days following the filing of the removal petitions. Generally, a statutory requirement will be construed as mandatory when it contains the word "shall." Wilmington City School Dist. Bd. of Edn. v. Clinton Cty. Bd. ofCty. Commrs. (2000), 141 Ohio App.3d 232, 239. This is especially true when the statute prescribes the performance of a specific duty. State exrel. Webb v. Byran City School Dist. Bd. of Edn. (1984), 10 Ohio St.3d 27,31. Moreover, if a statute is interpreted as mandatory, the failure to comply will render any subsequent proceeding null and void. WilmingtonCity School.
However, the Supreme Court of Ohio has recognized a different rule when the statute contains a timing provision. In State ex rel. Jones v.Farrar (1946), 146 Ohio St. 467, the court stated:
 "As a general rule, a statute which provides a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." Id. at 472.
 However, the Supreme Court has also recognized an exception to the foregoing rule. The exception provides that "*** unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer." State ex rel. Smith v. Barnell (1924), 109 Ohio St. 246, 255.
In recently restating the foregoing exception, the Supreme Court has indicated that the Farrar rule concerning timing provisions is applicable unless "*** [the] statutory time requirement evinces an object or purpose to limit a court's authority that the requirement will be considered jurisdictional." State v. Bellman (1999), 86 Ohio St.3d 208, 210.
Although the Farrar rule and its exception were recognized more than fifty years ago, the Supreme Court has continued to apply the rule in interpreting timing provisions. In In re Davis (1999), 84 Ohio St.3d 520,522, the statute in question provided that after a dispositional hearing had been held in a proceeding concerning an abused, neglected or dependent child, a juvenile court "`*** shall enter an appropriate judgment within seven days.'" Id. at 521, quoting R.C. 2141.35(B)(3). The Davis court began its analysis by noting that the Farrar rule was applicable because the statute placed a time restriction upon the court's performance of its official duty. The court then held that the exception to the Farrar rule did not apply in this instance because "*** R.C. 2151.35
does not include any expression of intent to restrict the jurisdiction of the court for untimeliness." Id. at 522. Thus, the court concluded that the seven-day requirement was directory in nature and, as a result, was not jurisdictional.
The Supreme Court has also applied the Farrar rule to a provision in Ohio's sexual predator law which stated that a trial court "shall" hold a hearing on the sexual predator issue prior to sentencing the defendant. In Bellman, the appellate court concluded that the trial court had lost its authority to make a sexual predator determination because the sexual predator hearing was not held until after the defendant had been sentenced. In reversing the appellate court on this issue, the Supreme Court compared the statute in question to other timing provisions in the criminal code:
 "For example, R.C. 2941.401 involving speedy trial rights for untried indictments provides that if the action is not brought within the required time, `no court any longer has jurisdiction thereof, the indictment *** is void, and the court shall enter an order dismissing the action with prejudice.
 "By contrast, the language of R.C. 2950.09(B)(1) `does not establish that its time periods are for anything other than convenience and orderly procedure,' see State ex rel. Harrell v. Streetsboro Bd. of Edn. (1989), 46 Ohio St.3d 55, 63, ***, and it `does not include any expression of intent to restrict the jurisdiction of the court for untimeliness.' [Davis at 522]; ***. The provision, then, is not jurisdictional, and a defendant may waive the requirement in R.C. 2950.09(B)(1) that the sexual predator hearing precede sentencing." Bellman at 210-211.
 In the instant action, the disputed statutory language clearly delineates a time limit as to the performance of an official duty; i.e., the statute requires the trial judge in a removal action to hold the trial within thirty days of the filing of the case. Moreover, the exception to the Farrar rule is inapplicable because our review of the entire statutory scheme governing the removal of public officers, R.C. 3.07 through 3.10, shows that the General Assembly has not given any express indication that it intended for a violation of the time limit to deprive a trial judge of jurisdiction over such a case. Therefore, this court concludes that the Farrar
rule of statutory interpretation is applicable to the thirty-day limit of R.C. 3.08.
In regard to the intent of the General Assembly, this court would note that the provisions of R.C. 3.08 readily indicate that the legislature intended for a removal proceeding to be relatively short in duration. The fact that the statute contains specific timing provisions as to the service of the removal complaint and the date of the trial demonstrates that the legislature believed that time was of the essence in determining whether a public officer has engaged in sufficient misconduct to warrant his removal from office.
However, the foregoing type of statement could be made in relation to the majority of statutory provisions in which the General Assembly has placed a time restriction upon the performance of a particular act. For example, the time limits set forth in Ohio's Speedy Trial statutes, R.C.2945.71 et seq., clearly make time of the essence in all criminal prosecutions in this state. Nevertheless, although a violation of the speedy trial time limits can result in the dismissal of the charges against the criminal defendant, such a violation does not affect the jurisdiction of the trial court. See, e.g., State ex rel. Woodbury v.Spitler (1974), 40 Ohio St.2d 1, 3.
By continuing to follow the Farrar rule in relation to statutory time limits, the Supreme Court has indicated that the fact that time is of the essence in a proceeding is not sufficient for a violation of the time limit to deprive a trial court of jurisdiction. Instead, the Supreme Court requires an express indication of the legislature's intent before such violation can result in a loss of jurisdiction. In essence, the Supreme Court has held that the continuing jurisdiction of a trial court should be presumed in the absence of a direct indication to the contrary.
In arguing that the thirty-day time limit of R.C. 3.08 is mandatory, relators have placed heavy emphasis upon the fact that the courts of this state have concluded that the removal statutes are quasi-penal in nature and should be strictly construed. See 2,867 Signers v. Mack (1979),66 Ohio App.2d 79, paragraph two of syllabus. Relators also emphasize that spurious attempts to remove public officers from office are not favored under the law.
As to this point, this court would merely note that, in Davis andBellman, supra, the Supreme Court applied the Farrar rule to proceedings involving child custody determinations and sexual predator determinations. Given the serious nature of those types of proceedings, we hold that the Supreme Court has not placed any restrictions upon the type of statutory proceedings to which the Farrar rule can apply.
As an aside, it should be noted that our analysis has not addressed the issue of whether a violation constitutes a basis for dismissing the recall petitions, similar to the consequences of a violation of the speedy trial statutes has upon a criminal prosecution. For the purposes of our analysis in this case, it will suffice to indicate that if a violation of the trial time limit in R.C. 3.08 does constitute a basis for dismissing a removal action, that violation would merely be a procedural error which would not affect the jurisdiction of the common pleas court. As a procedural error, a violation of the time limit would be an issue which relators could raise in an appeal to this court from the final decision in the recall action.
Finally, our review of relators' response to the motion to dismiss shows that they referred to the following two points in regard to the thirty-day issue: (1) any delay in the appointment of respondent as a visiting judge cannot be used as an excuse for failing to satisfy the thirty-day time limit because the underlying case could have been assigned to a sitting member of the common pleas court; and (2) the petitioners in the underlying case were derelict in notifying the common pleas court that a trial had to be scheduled immediately. As to these two issues, we would emphasize that, although they may be relevant to the ultimate question of whether the underlying case should be dismissed as a result of the violation, they are irrelevant to the jurisdictional issue.
Pursuant to the foregoing analysis, this court holds that the thirty-day time limit in R.C. 3.08 for scheduling a trial in a removal action is directory in nature. In turn, it follows that the thirty-day time limit is not a jurisdictional requirement. That is, there are no circumstances under which a violation of the time limit will deprive a trial judge of jurisdiction to proceed in a removal action. To this extent, relators' petition fails to state a viable prohibition claim because their own allegations support the conclusion that respondent has jurisdiction to go forward in the underlying case.
As a separate basis for their prohibition claim, relators assert that respondent lacks the authority to go forward because personal jurisdiction was never perfected over them in a timely manner. In support of this assertion, relators alleged that copies of the recall petitions were never served upon them prior to the date upon which the pretrial hearing was held. Relators further allege that although respondent subsequently ordered the clerk of courts to serve summons upon them after October 23, 2001, this service will not be sufficient because it will not be timely under the specific requirements of R.C. 3.08.
In moving to dismiss this aspect of relators' claim, respondent maintains that even if service of summons were never completed in accordance with the statute, he still has the ability to proceed because relators made a voluntary appearance in the underlying case two days after the petitions were filed. In support of this contention, respondent has attached to his motion to dismiss copies of the following documents: (1) an entry of appearance filed on behalf of relators by their attorneys; (2) a motion to transfer the recall case to the docket of a different common pleas judge; and (3) a motion to deny pro hac vice
status to an attorney representing the petitioners in the recall action.
In their response to the motion to dismiss, relators have not contested the authenticity of the three documents submitted by respondent. In fact, as part of their statement of the facts in their response, respondents readily admit that the two motions in question were filed immediately after the commencement of the recall case. Despite this, relators appear to contend that the filing of the three documents was not sufficient to give respondent jurisdiction over their persons because, pursuant to Girard City School Dist. Bd. of Edn. v. Stringer (Mar. 21, 1986), Trumbull App. No. 3664, unreported, 1986 Ohio App. LEXIS 6030, the Ohio Rules of Civil Procedure are not applicable to this type of proceeding. Stated differently, relators argue that personal jurisdiction can only be invoked in accordance with the procedure under R.C. 3.08.The Supreme Court of Ohio has consistently held that a trial court has acquired jurisdiction over the defendant's person when one of the following three events has occurred: (1) the defendant has been served with process; (2) the defendant has made a voluntary appearance in the case; or (3) the defendant has committed certain acts which constitute an involuntary submission to the jurisdiction of the court. See, e.g.,Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. In relation to the second of these events, the Supreme Court has also indicated that the voluntary appearance can be made by either the defendant or his legal representative. Id.
Furthermore, our review of the precedent on this issue shows that the Supreme Court's holding as to the effect of an entry of appearance has not been predicated upon its interpretation of the Civil Rules. Instead, this holding is predicated upon the basic principles of due process. See State ex rel. Ballard v. O'Donnell (1990), 50 Ohio St.3d 182,183. In addition, we would note that the foregoing holding was first set forth in Lincoln Tavern, Inc. v. Snader (1956), 165 Ohio St. 61, a decision which the court rendered prior to the enactment of the Civil Rules.
As was noted above, in regard to the issue of service, R.C. 3.08 states that the judge or clerk of courts is required to "cause a copy of such complaint to be served upon the officer, against whom the complaint has been filed, at least ten days before the hearing upon such complaint." In our estimation, this language is not sufficiently specific to indicate that the General Assembly intended for service of process to be the sole manner in which a common pleas court could attain personal jurisdiction over a defendant in a removal/recall proceeding. Accordingly, consistent with the general principles of due process, we conclude that relators' entry of appearance, filed on their behalf by their attorneys in the underlying proceeding, was sufficient to establish respondent's jurisdiction over them.
In regard to the "service" issue, this court would further note that, in conjunction with the judgment he entered on October 23, 2001, respondent issued a specific order to the Trumbull County Clerk of Courts. In this order, respondent instructed the clerk to serve a copy of the recall complaint, i.e., the recall petitions, upon each of the five relators as the defendants in the underlying action.
Although the record before respondent indicated that relators and their attorneys had been aware of the recall action since its filing on September 19, 2001, respondent's order to the clerk of courts was clearly an attempt to ensure that relators were served in accordance with R.C.3.08. As to this point, we would again emphasize that respondent had scheduled the trial for November 5, 2001. Therefore, by issuing his order to the clerk on October 23, 2001, respondent intended for the service of the recall petitions upon relators to occur at least ten days prior to the scheduled date. Under this scenario, R.C. 3.08 would be met because the service of summons would be completed ten days prior to trial.
In summation, this court holds that relators' assertions concerning the "service" issue are not sufficient to establish a lack of personal jurisdiction. Moreover, those assertions are insufficient to show that relators' due process rights were violated as a result of the procedure followed by respondent.
In light of the foregoing analysis, this court holds that, even when the allegations in relators' prohibition petition are construed in a manner most favorable to them, those allegations are insufficient to show that they will be able to prove a set of facts under which they could establish the second element of a prohibition claim. That is, relators' allegations are legally insufficient to demonstrate that respondent lacks jurisdiction to go forward in the underlying case. As a result, the dismissal of this action is warranted under Civ.R. 12(B)(6).
Therefore, respondent's motion to dismiss the prohibition petition is granted. It is the order of this court that relators' prohibition petition is hereby dismissed.
PRESIDING JUDGE WILLIAM M. O'NEILL, JUDGE JUDITH A. CHRISTLEY, JUDGE ROBERT A. NADER.
[1] For some reason of which this court is unaware, the parties in thiscase have referred to the underlying case as the "recall" proceeding.The use of the term "recall" in this context is somewhat confusingbecause a proceeding under R.C. 3.07 does not result in an election inwhich the public would decide whether a public official should be allowedto keep his office. Instead, an action under R.C 3.07 involves a judicialdetermination as to whether the public official should be removed on thebasis of misconduct. For the sake of clarity, we will continuethroughout this opinion to refer to the underlying action as the "recall"case. However, in referring generally to a proceeding under R.C. 3.07,we will call it by its proper name; i.e., a removal action.
[2] As part of this judgment, respondent also granted the applicationof Attorney Sebastian Rucci to appear pro hac vice as counsel for theindividuals who had filed the recall petitions. In their varioussubmissions before this court, the parties have discussed the generalpropriety of this particular aspect of respondent's decision. However,given that the decision to allow Attorney Rucci to appear in theunderlying case had no effect upon respondent's jurisdiction to proceedto trial, this court will not address the merits of this particularissue.