[Cite as *State ex rel. Robertson v. O'Donnell*, 2025-Ohio-4475.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL.,
JOSHUA ROBERTSON,

      Relator,

      v.

JUDGE JOHN O'DONNELL,

      Respondent.

No. 115117

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** WRIT DENIED
**DATED:** September 24, 2025

---

Writ of Prohibition
Motion No. 585055
Order No. 587934

---

## *Appearances:*

Law Office of Donald Gallick, LLC, and Donald Gallick, *for relator*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and David J. Peters, Jr., Assistant Prosecuting Attorney, *for respondent*.

MICHAEL JOHN RYAN, J.:

{¶ 1} On May 12, 2025, the relator Joshua Robertson commenced this prohibition action against the respondent Judge John O'Donnell to prevent further

continuation of the underlying case, *Medical Quant USA v. Robertson,* Cuyahoga C.P. No. CV-25-112894, for lack of personal jurisdiction. On June 4, 2025, the respondent judge filed a motion to dismiss, and Robertson filed his brief in opposition on June 15. This court has reviewed the filings in the present case and the relevant filings in the underlying case, and this matter is ripe for adjudication. For the following reasons, this court denies the application for a writ of prohibition. FACTUAL AND PROCEDURAL BACKGROUND.

{¶ 2} The plaintiff in the underlying case, Medical Quant USA, Inc., dba Multi Radiance Medical ("Multi Radiance"), is an Ohio corporation with its principal office located in Solon, Ohio. Multi Radiance engages in the development, marketing, selling, and distribution of medical devices and therapeutic products worldwide.

{¶ 3} The complaint in the underlying case avers that Infrared Cameras, Inc., a Texas-based camera manufacturer, acquired Digatherm, a company operating in Ocala, Florida, and began selling a thermal-imaging product called Digatherm Thermal Imaging, which uses infrared thermography cameras, proprietary software, and graphical user interface to image, detect, and monitor abnormalities in humans and animals. Infrared Camera, Inc. retained Digatherm's Ocala, Florida office and many of its employees.

{¶ 4} In November 2022, Multi Radiance entered into an Exclusive License and Distribution Agreement with Infrared Cameras, Inc., under which it would sell Digatherm's thermal imaging cameras worldwide. The complaint further avers that

Multi Radiance acquired Digatherm, including control of Ocala, Florida office, pursuant to a lease assignment. The licensing agreement requires Multi Radiance to fulfill sales quotas and grants full control over Digatherm's manuals, trade secrets, inventions, and products. Multi Radiance offered these products under the WellVu brand.

{¶ 5} Multi Radiance offered positions to Digatherm's employees and sales people at the Ocala, Florida office to sell the product. Joshua Robertson and Cathy Pollock were two of the Digatherm employees that Multi Radiance avers it hired: Robertson as an outside sales representative and Pollock as an inside sales representative. As such, they had access to all of Multi Radiance's confidential and proprietary information, including design specifications, marketing materials, customer databases, and proprietary software. Their duty was to sell the Digatherm imaging products for Multi Radiance.

{¶ 6} However, the complaint alleges that Robertson and Pollock misappropriated Multi Radiance's proprietary information and trade secrets; defrauded its other employees to help create new thermal-imaging cameras, software, and products under the guise of developing new products for Multi Radiance; converted the confidential customer database and then started selling the new product as their own to Multi Radiance's customers. The complaint alleges that Robertson and Pollock even set up a competing booth at a trade show. This resulted in a significant drop in Multi Radiance's sales.

{¶ 7} After terminating Robertson and Pollock, Multi Radiance commenced the underlying case against them. The claims included (1) tortious interference with business and contractual relationships, (2) misappropriation of trade secrets, (3) unfair competition, (4) breach of fiduciary duty, (5) faithless servant doctrine, (6) violation of Ohio Deceptive Trade Practices Act, R.C. 4165.01 to 4165.04, (7) civil action for damages for criminal acts, (8) civil conspiracy, (9) conversion, (10) unjust enrichment, and (11) replevin.

{¶ 8} Robertson and Pollock, through their attorney, entered special appearances to contest personal jurisdiction. Both filed motions to dismiss for want of jurisdiction and improper venue. The respondent judge summarily denied Pollock's motion to dismiss, but Robertson's motion remains pending. Robertson, fearing possible waiver or forfeiture of the personal-jurisdiction defense, commenced the present prohibition action.

{¶ 9} In his motion to dismiss in the underlying case and in his writ of prohibition, Robertson avers the following: He is a Florida resident and has never been an Ohio resident. He never signed any employment agreement or contract with Medical Quant, USA or any other company or corporation owned by Medical Quant USA. Medical Quant USA only paid compensation to Robertson's limited liability company, JT Sales Specialist, which he registered in Florida in 2021. As such, he worked as a "1099" independent contractor in Florida for Medical Quant USA. He has never worked in Ohio, never had a business address in Ohio, never met with prospective customers or clients in Ohio, and never solicited any customers

or transactions in Ohio. Nor did he consent to be sued in Ohio or sign a forum-selection clause for Ohio. He denies that there are sufficient minimum contacts with Ohio and this lawsuit to vest the respondent judge with personal jurisdiction over him.

{¶ 10} In the motion to dismiss the present case, the respondent judge cites to averments in the complaint that indicate minimum contacts among Robertson, Ohio, and the underlying case as follows: (1) Robertson works for Medical Quant as part of an acquisition and was hired as an outside sales representative (paragraphs 25, 27, and 28); (2) Robertson held himself out as Vice President of Multi Radiance's WellVu brand (paragraph 30); (3) Roberston used and stole Multi Radiance's devices, documentation, inventions, and confidential and proprietary information to sell competing products to Multi Radiance's customers (paragraphs 33-36, and 69); and (4) Robertson used Multi Radiance's customer information and databases to sell his Digathermal products that were pirated from Multi Radiance (paragraphs 35 and 42).

{¶ 11} Multi Radiance's brief in opposition pending before the respondent judge is even more specific. Tom Kelly is the Chief Operating Officer of Medical Quant and filed an affidavit averring, inter alia, the following: Multi Radiance's confidential and proprietary information and trade secrets are maintained on its computers and servers at its Ohio headquarters in Solon, Ohio. All sales representatives, which would include Roberston, have regular and ongoing contact with headquarters and partake in trainings and other meetings in Ohio. Multi

Radiance hired Robertson to sell its products in the United States and worldwide. Robertson maintained routine contact with Multi Radiance's Ohio headquarters and traveled to Ohio on numerous occasions for company purposes. Multi Radiance gave Robertson special access to its confidential and proprietary information and trade secrets to sell their products.

{¶ 12} Kelly continued: Robertson accessed Multi Radiance's customer relationship management system and changed information in order to direct leads away from other sales representatives and toward himself. He also stole the company's customer lists. He used a company's technical support specialist to develop new software and pair it with an interface and competitor's lenses under the guise of creating a new product for Multi Radiance. However, Robertson then formed a new company and sold the new product through this new company rather than Multi Radiance. In doing so, he used Multi Radiance's customer lists that were obtained from the computers in Ohio.

{¶ 13} Finally, Multi Radiance investigated Robertson's corporate email accounts and discovered that he had deleted emails from Multi Radiance's system. In summary, Multi Radiance alleges that Robertson stole proprietary information, including product software, customer lists, and other trade secrets from Ohio to set up his own competing company to the harm of Multi Radiance.

LEGAL ANALYSIS

{¶ 14} The principles governing prohibition are well established. Its requisites are (1) the respondent against whom it is sought is about to exercise

judicial power, (2) the exercise of such power is unauthorized by law, and (3) there is no adequate remedy at law. *State ex rel. Largent v. Fisher*, 43 Ohio St.3d 160 (1989). Prohibition will not lie unless it clearly appears that the court has no jurisdiction of the cause that it is attempting to adjudicate or the court is about to exceed its jurisdiction. *State ex rel. Ellis v. McCabe*, 138 Ohio St. 417 (1941), paragraph three of the syllabus. "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." *State ex rel. Sparto v. Juvenile Court of Darke Cty.,* 153 Ohio St. 64, 65 (1950). Furthermore, it should be used with great caution and not issue in a doubtful case. *State ex rel. Merion v. Tuscarawas Cty. Court of Common Pleas*, 137 Ohio St. 273 (1940). Nevertheless, when a court is patently and unambiguously without jurisdiction to act whatsoever, the availability or adequacy of a remedy is immaterial to the issuance of a writ of prohibition. *State ex rel. Tilford v. Crush*, 39 Ohio St.3d 174 (1988); and *State ex rel. Csank v. Jaffe*, 107 Ohio App.3d 387 (8th Dist. 1995). However, absent such a patent and unambiguous lack of jurisdiction, a court having general jurisdiction of the subject matter of an action has authority to determine its own jurisdiction. A party challenging the court's jurisdiction has an adequate remedy at law via an appeal from the court's holding that it has jurisdiction. *State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas*, 78 Ohio St.3d 489 (1997). Moreover, this court has discretion in issuing the writ of prohibition. *State ex rel. Gilligan v. Hoddinott*, 36 Ohio St.2d 127 (1973).

{¶ 15} Specifically, the issuance of a writ of prohibition based on an alleged lack of personal jurisdiction, as compared to subject-matter jurisdiction, is an extremely rare occurrence. *Clark v. Connor,* 1998-Ohio-385. Furthermore, if the allegations of lack of personal jurisdiction are not premised upon a complete failure to comply with the minimum contacts requirement of constitutional due process, prohibition does not lie. *State ex rel. Suburban Constr. Co. v. Skok,* 1999-Ohio-329, and *State ex rel. Downs v. Panioto,* 2006-Ohio-8, ¶ 28.

{¶ 16} In the present case, the competing allegations about whether Robertson is just a Florida independent contractor with no contacts with Ohio or whether he was an employee/sales representative of Multi Radiance who received training and information at Multi Radiance's headquarters in Ohio and stole confidential information, software, trade secrets, and customer lists from the company's Ohio computers convinces this court that the respondent judge is not patently and unambiguously without personal jurisdiction. Thus, the respondent judge has jurisdiction to determine his own jurisdiction on this issue. Robertson has an adequate remedy by way of appeal. *State ex rel. Ruessman v. Flanagan,* 65 Ohio St.3d 464 (1992).

{¶ 17} Robertson's fears of waiver are unfounded. Civ.R. 12(H)(1) provides, in pertinent part, that the defense of lack of personal jurisdiction is waived if it is not made by motion or not included in a responsive pleading. By filing the motion to dismiss based on lack of personal jurisdiction, Robertson has preserved his defense.

{¶ 18} Accordingly, this court denies the application for a writ of prohibition. Relator to pay costs. This court directs the clerk of courts to serve all parties notice of the judgment and its date of entry upon the journal as required by Civ.R. 58(B).

{¶ 19} Writ denied.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
DEENA R. CALABRESE, J., CONCUR